(Decided 26th March, 1878.)

Joseph G. Wilson *vs.* George Merryman and others, trading as Merryman, Brother & Co.

*Motion to dismiss Appeal—Rule* 16, *respecting Appeals—Onus on Appellant to show that the Delay in the transmission of the Record was the act of the Clerk—Duty of Appellant in reference to Transmission of record—No bill of particulars demandable on a proceeding by Scire facias to enforce a Mechanics' lien—Practice under such proceeding—Article* 61, *section* 19, *of the Code—Ruling on a Demurrer, not the subject of a Bill of exception—Section* 30, *of Article* 61, *of the Code—Admissibility of Evidence to show title—Bill. of Exception—When a Judgment will not be reversed—Special objection to an Instruction properly before the Appellate Court.*

On a motion to dismiss an appeal on account of the delay in the transmission of the record, the *onus* is on the appellant, under the 16th Rule, respecting

Wilson *vs.* Merryman, *et al.*

appeals, to show that such delay was occasioned by the neglect, omission or inability of the clerk; but the spirit and intent of the Rule will be gratified if the appellant show that he has used due diligence to comply with it, and that he has not been guilty of any omission, default or laches.

On a proceeding by *scire facias* to enforce a mechanics' lien, no bill of particulars is demandable. If the lien claim as filed, shall set forth, as required by sec. 19, of Art. 61, of the Code, "the kind and amount of materials furnished and the time when the materials were furnished," no other account or bill of particulars can be demanded; but if the claimant fail to comply with this requirement, the proper course for the defendant is to move to quash the writ of *scire facias* on account of the defect in the lien claim filed.

The ruling of the Court on a demurrer is not the subject of a bill of exception. Questions on the pleadings arise upon the record; the rulings thereon do not come within the Statute of Westminster and ought not to be incorporated in a bill of exception.

On a proceeding to enforce a mechanics' lien claim, after the case had been called for trial, the defendant had pleaded, and the Court had ruled on the demurrer to the pleas, and issues had been joined, three persons appeared by counsel, each claiming to be the owner of one of the houses sought to be charged with the lien, and prayed that separate cases might be docketed for each house, so that each could be tried separately. This application was granted by the Court, and a separate case was docketed for each house accordingly, and each of the petitioners then announced himself ready to proceed with the trial of the causes so docketed, and desired a trial to be had at once in the separated cases, before the case already commenced should be proceeded with; but the Court denied this application and directed the trial already commenced to be proceeeded with, which was accordingly done. To this ruling, exception was taken. On appeal, it was HELD:

That under section 30, of Article 61, of the Code, it was the right of the several parties petitioners, if application for that purpose had been made in due time, not only to have the separate cases docketed as prayed; but to be allowed each to appear and defend separately in respect to the particular property in which he claimed an interest; but that the application was made too late, not having been made *on the return of the* writ as required by said section of the Code.

In a proceeding to enforce a mechanics' lien against certain houses and lots, the ownership of the defendant being denied by the pleading and put in issue, a lease conveying to the defendant the several lots of ground described

Wilson *vs.* Merryman, *et al.*

in the lien claim, executed during the time the materials in question were being furnished, between the date of the first and last items in the account, is admissible as evidence in connection with other evidence to be subsequently offered, to show the defendant's ownership of the property at and before the time of the ordering and furnishing of the materials in question, and the making of said lease.

Where exceptions are taken to the allowance by the Court of certain questions to be asked of the witnesses, the bills of exception should state what testimony was given by the witnesses, to enable the Appellate Court to determine whether the appellant was injured by the ruling of the Court below; for unless this appears there is no ground for reversal.

A judgment will not be reversed because of the rejection of the appellant's prayers, where the Court gave an instruction which covered the whole case, and, so far as regarded the legal propositions involved, was free from objection.

Where a bill of exceptions shows that special objection was made in the Court below, to the instruction granted, on the ground of insufficiency of evidence to support the hypothesis of fact therein stated, such objection is properly before the Appellate Court, and if well founded, is material and fatal.

APPEAL from the Superior Court of Baltimore City.

*The first, second, third, fourth, fifth, sixth and seventh* exceptions are stated in the opinion of the Court.

*The eighth, ninth and tenth* exceptions were abandoned.

*The eleventh exception.*—The plaintiffs offered six prayers and the defendant twenty-eight, which the Court (DOBBIN, J.,) refused, remarking as follows:

" This case presents no such complication of law or facts as would justify my sending it to the jury with thirty-four instructions, asked by the counsel for the plaintiffs and the defendant. To do so would impose upon that tribunal a task for which it is not fitted, and would involve a departure from the duty of the Court, which is to make plain the matters presented to the consideration of the jury, and not to confuse and mislead them by instructions too abstruse or too multiplied for their easy comprehension. Setting aside, therefore, the instructions asked as too

numerous and complicated to furnish a reliable guide to the jury, I shall give the instruction which is contained in the plaintiffs' fourth prayer, supplemented with so much of the defendant's propositions as I think, places their defence properly before the jury.

"My instruction is as follows: If the jury believe that prior to, or in the month of April, 1873, and before the matters hereinafter stated, the defendant, Wilson, was the owner or the reputed owner of the four several lots, and the houses erected thereon, described in the lien claim and evidence, and that said houses were then in an unfinished condition, and that in said month of April, 1873, the plaintiffs and said defendant entered into a contract with one another, whereby plaintiffs were to sell to defendant, and defendant was to buy from plaintiffs all the bricks, and all the varieties of bricks, except front pressed bricks, which the defendant would thereafter want or require for finishing or completing the premises aforesaid, and that the price for which run of kiln bricks to be furnished under said contract, was, according to the terms thereof, agreed to be nine dollars and a quarter per thousand, and that the price of the paving bricks which defendant might require from the plaintiffs under said contract, if the jury find that the defendant might require paving bricks from the plaintiffs under said contract, was not settled at the time aforesaid, but was left open to be fixed according to the kind of paving bricks which might thereafter be required by the defendant as aforesaid; and if the jury further find that the plaintiffs did furnish under the said contract in the months of April, May and June, 1873, 158,000 run of kiln bricks for the aforesaid premises, and that the defendant in the said month of June, 1873, passed to the plaintiffs his three several promissory notes, described in the evidence in this case, in order to secure the payment, amongst other, of what was so due for said bricks so furnished by the plaintiffs as aforesaid to him,

which said notes, except as to the sum of $380 paid on one of said notes on account, were afterwards dishonored, and that said notes having been so dishonored, the plaintiffs, in the month of October, or in the month of November, were about to file a lien claim against all said premises, in respect of said money so due them for said bricks furnished by them, as in the lien claim and evidence in this cause mentioned, and the defendant on being notified of such, the intention of the plaintiffs, begged them not to file said lien claim less he should be ruined thereby, and insisted to the plaintiffs then and there that the said plaintiffs, had not fully performed the said contract on the part of them, the said plaintiffs, and had not furnished all the bricks, and espeeially had not furnished the paving bricks which he, the defendant, required for finishing and completing said premises, and then and there notified the said plaintiffs that for finishing and completing said premises he, the defendant, would require, and then and there did require, the plaintiffs to furnish, under the contract aforesaid, to said premises, certain quantities of arch brick, and of paving bricks, and the prices of the latter were then fixed by and between the plaintiffs and the defendant, as in the evidence mentioned, and that the plaintiffs furnished to said defendant under said contract, bricks for the finishing and completing of said premises as follows: On 13th November, 1873, 750 arch bricks; on the 14th November, 1873, 3,000 paving bricks; on the 25th March, 1874, 1,000 paving bricks; on the 2nd May, 1874, 1,000 paving bricks; and on the 9th May, 1874, 1,000 paving bricks; and if the jury find that said contract first hereinbefore mentioned between plaintiffs and defendant, if the jury shall find the same was never rescinded by either, or both parties thereto, at any time previously to, or upon the said 9th May, 1874, and that under said contract the defendant had the right to call on the plaintiffs to make the deliveries of bricks aforesaid of the 13th November, 1873, of the 14th November, 1873, of the

25th March, 1874, of the 2nd May, 1874, and of the 9th May, 1874, for the finishing and completion of said premises. And if the jury find that the plaintiffs filed their lien claim within six months from the time of the furnishing by them of said bricks to said premises, under the contract aforesaid, if the jury find said furnishing of bricks and said contract, then the plaintiffs are entitled to recover the amount claimed in the said lien claim, and apportioned as therein mentioned amongst said several premises, except that the plaintiffs are not entitled to recover the amount claimed in said lien in respect of the premises which were released, after the filing of said lien, from the same by the plaintiffs, as appears by the record in the cause.

" But the plaintiffs will not be entitled to recover under the foregoing instruction, if the jury shall find that the contract made between the plaintiffs and the defendant, Wilson, in April, was not for the furnishing of all the bricks needful for the completion of the said premises, but was only for such bricks as are designated in the trade as "run of kiln," and that all of said run of kiln bricks had been delivered and settled for by the notes of the defendant, Wilson, and the contract at an end before the order for, and delivery of paving bricks in November, and afterwards, as shown in the evidence, and that between the completion of the deliveries under the contract of April, and the deliveries in November, and subsequently, new rights had intervened by the sale of the houses to other persons."

The defendant excepted generally to the refusal of his prayers, and the giving of the instruction which was given, and specially excepted (on the ground that there was no evidence to warrant it) to so much of said instruction as submitted to the jury the question whether the price of paving bricks was left open to be fixed according to the price of paving bricks which might thereafter be required ; and also to so much of the said instruction as sub-

mitted to the jury the question whether at the time of the conversation between said plaintiff, George Merryman, and the defendant, Wilson, in the fall of 1873, the said defendant "insisted that the plaintiffs had not furnished the paving bricks, which he, the defendant, required for finishing and completing said premises." Verdict was rendered for the defendant on the first two houses north of Fayette street, and for the plaintiffs, for $371.58 on each of the two houses adjoining on the north. The defendant moved in arrest of judgment and filed also a motion for a new trial. The Court overruled both motions, and judgment was entered on the verdict. The defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Thos. R. Clendinen* and *Henry Stockbidge,* for the appellant.

*Julian I. Alexander* and *Joseph P. Merryman,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

The first question to be determined in this case arises on the motion to dismiss the appeal.

It appears from the record that the verdict was rendered on the 17th day of December 1875. The defendant below moved for a new trial, and in arrest of judgment, these motions were overruled, and judgment on verdict entered on the 4th day of March 1876. On the 23rd day of March 1876 defendant appealed, the transcript was not sent up to this Court till March 24th 1877, which was after the time allowed by the rule for sending up the transcript had passed ; and for this cause the appellees say the appeal ought to be dismissed.

By *Rule 2nd*, six months was allowed for the transmission of the transcript, counting from the time of taking the appeal.

*Rule* 16 provides " that no appeal shall be dismissed because the transcript shall not have been transmitted within the time prescribed, if it shall appear to the Court of Appeals that such delay was occasioned by the neglect, omission or inability of the Clerk, but such neglect, omission or inability shall not be presumed, but must be shown by the appellant."

Under this Rule, if the transcript has not been sent up in time, the presumption is that the delay is through the fault or omission of the appellant, and the *onus* is on him to repel this presumption; by showing, in the language of the Rule " that the delay was occasioned by the neglect, omission or inability of the Clerk."

The only parties upon whom the law imposes the duty of preparing and transmitting the record, being the appellant and the Clerk, if delay occurs it must ordinarily be ascribed to the act or omission of one or the other of those parties, hence the language of the Rule. The spirit and intent of which is that in such case the *onus* is on the appellant to prove affirmatively that he has used due diligence to comply with the Rule, and that he has not been guilty of any omission, default or *laches*.

In this case we think this has been satisfactorily shown.

It appears from the proof taken on this motion, that immediately after the entry of the appeal, the appellant filed his appeal bond with the usual affidavit, and directed the Clerk to make up the record for this Court.

His counsel testifies that early in August 1876—*which was less than five months after appeal taken*, he was informed by the Clerk, that the transcript was completed, and paid the costs of making out the same. This was all the appellant was required to do; it was then the duty of the Clerk to send up the record. The counsel had good

reason to believe this had been done as directed; he states that he was not aware the record had not been transmitted, until he received the printed docket of the Court of Appeals for the succeeding October Term 1876, and discovered the appeal was not entered thereon. On inquiry of the Clerk, he was informed that the transcript had been retained, waiting until the counsel should furnish him with certain questions which had been propounded *in writing* to witnesses at the trial, and which were intended to be inserted in the 8*th*, 9*th*, *and* 10*th bills of exceptions.* Those exceptions had been prepared and signed by the Judge, leaving blank spaces for the insertion of the written questions therein referred to; but the papers on which the questions were written had been mislaid or lost. It does not appear in what manner this occurred, each of the counsel denies having had them in his possession after the trial. We do not agree with the appellees' counsel in saying that the responsibility for their loss rests upon the appellant or his counsel; nor are we prepared to say that it was incumbent on him to insert the questions at length in the bills of exceptions when they were prepared. It is the constant practice to incorporate written papers in bills of exceptions, by reference only, instead of copying them at length, and it is usual for such papers, together with the prayers to go into the hands of the Clerk to be by him inserted in the transcript. It was not any fault or neglect on the part of the appellant's counsel that the written questions were not inserted at length in the bills of exceptions.

It appears that when he was informed by the Clerk that the record was made up, in August 1875, and paid for the same, the Clerk did not inform him that he was unable to complete it, for the want of the "written questions." Afterwards when he learned that they had been mislaid and could not be found, he directed the transcript to be sent up without them; and they now appear in their imperfect form, and have been abandoned in consequence.

Upon this state of facts we are of opinion that no fault or *laches* can be imputed to the appellant's counsel, in the failure to transmit the record within the time prescribed by the Rule, and therefore the motion to dismiss is overruled.

We proceed to examine the questions presented by the appeal. The suit was brought to enforce a lien, under *Article* 61 *of the Code,* for materials furnished by the appellees for the construction of four dwelling houses on Fulton street in the City of Baltimore.

The lien claim was filed on the 24th day of August 1874, and states that the amount claimed was "a debt contracted for bricks furnished by the appellees, within six months last past, for and in the erection and construction of said brick dwelling houses, of which the appellant Joseph G. Wilson is the owner or reputed owner, he being the architect, contractor and builder thereof; the said materials being furnished at the instance and request of said Wilson, within six months last past." The aggregate amount of claim was $1486.33 ; and the lien was claimed on each house for $371.58. Accompanying the claim and filed and recorded therewith was a bill of particulars, or account for bricks, charged in various quantities at different times, the first item being dated April 26th 1873 and the last May 9th 1874. The lien on the *fourthly* described house, the one nearest Fayette street, was entered "*satisfied.*"

On the return of the *scire facias,* the appellant appeared by counsel, and before pleading, demanded a "*bill of particulars of plaintiffs' claim,*" but this was refused, the Court being of opinion that the account filed with the lien claim was sufficient, and this ruling forms the subject of the appellant's *first bill* of exceptions.

The course pursued by the appellant was unusual and irregular, the proceedings being by *scire facias* on a record, a bill of particulars *as such,* could not properly be de-

manded.   The Code requires (Sec. 19, Art. 61,) that the lien claim, as filed, shall set forth, among other things, *" the kind and amount of materials furnished, and the time when the materials were furnished."*   If the statute has been complied with in this respect, no other account or bill of particulars can be demanded ; if, on the contrary, the claimant has failed to comply with this requirement, the proper course for the defendant is to move to quash the writ of *scire facias,* on account of the defect in the lien claim filed.   In this case a motion of that kind could not have prevailed, because, in our judgment, the particulars of the appellees' claim were sufficiently stated in the account filed of record, and it was not error to refuse the appellant's demand stated in this exception.

*The second bill of exceptions* was taken to the ruling of the Superior Court on the demurrer.   Questions on the *pleadings* arise upon the record, the rulings thereon do not come within the Statute of Westminster, and ought not to be incorporated in a bill of exceptions ; such a practice is irregular.

Nine pleas were filed, numbered from 1 to 9, and two other pleas called *" 1st additional plea "* and *" 2nd additional plea,"* to all of these, appellees demurred, the demurrer was ruled good as to the 1st, 3rd, 5th, 7th, and 8th.

There was no error in the ruling upon the demurrer.

The *first plea* alleges that the defendant is not now, nor was not at the time of the filing of the lien claim, nor at the time of the impetration of the writ nor since has been the owner of the property in said claim and proceedings alleged.   This is not a good plea, it does not deny that the defendant was the owner at the time when the contract was made, and the bricks delivered under it.   This defect was corrected by the *" first additional plea,"* to which there was replication and issue thereon.

The *third plea* is informal and irregular, and is bad as amounting to the general issue.

The *fifth plea* contains the immaterial averment that the bricks were not furnished to be used for and in the erection of the houses ; this plea is obnoxious to the objection that it is double.

The *seventh plea* denies that any one having authority so to do, requested the plaintiffs to furnish the bricks, &c., but does not deny that the defendant contracted for them himself.

The *eighth plea* does not distinctly deny the plaintiffs' cause of action and is bad as amounting to the general issue.

The pleas are loosely and inartificially drawn and do not follow the form prescribed by the Code, *Art.* 75, *secs.* 39, 40.

Every defence upon which the defendant relied was pre-. sented by the several pleas and additional pleas held good by the Superior Court, and he suffered no injury by the ruling on the demurrer, even if it had been in any respect erroneous.

It appears by the third bill of exceptions, that *Aquilla M. Carroll, Ross T. Pennington,* and *Benjamin M. Dennis,* severally appeared by counsel, each claiming to be the owner of one of the houses sought to be charged with the lien, and prayed that separate cases might be docketed for each house, so that each could be tried separately. The bill of exceptions states that this petition was granted by the Superior Court, and a separate case was docketed for each house accordingly, and each of the petitioners then announced himself ready to proceed with the trial of the causes so docketed, and desired a trial to be had at once in the said separated cases, before the present case should be proceeded with, but the Court denied their application for trial upon the separated cases, and directed the trial of the cause against Joseph G. Wilson alone to be proceeded with at once, which was accordingly done, and the defendant excepted, &c.

The Code provides, *Art.* 61, *sec.* 30, that "in all cases where one claim has been filed by one person for work done or materials furnished or both, for distinct buildings, it shall be lawful to issue one writ of *scire facias* to recover the same, which writ shall specify the amount claimed on each, and any party in interest upon the return of said writ may apply for and have as many cases docketed as there are houses proceeded against, and separate judgments shall be entered against each house, and the same proceedings shall be had as if separate liens had been filed.''

Under this provision it was the right of the several parties petitioners, if application for that purpose had been made in due time, not only to have the separate cases docketed as prayed ; but to be allowed each to appear and defend separately in respect to the particular property in which he claimed an interest ; and to deny this right would be error. But in this case the application was made too late, the Code provides that this privilege may be exercised, "*on the return of the writ.*" Here the writ was returned on the second Monday of January 1875. The cause was called for trial on the 10th day of December 1875 ; then the defendant, *Wilson,* pleaded, and after the ruling of the Court had been made on the demurrer, and issues had been joined ; the three parties named intervened, claiming title as before stated, and praying to be allowed to defend separately. That application came too late, and there was no error in refusing it.

Moreover it appears that these parties appeared by counsel, and defended the suit in the name of Wilson, and none of them have appealed. We think the ruling of the Superior Court as stated in the *third bill of exceptions* furnishes no ground for reversal.

The *fourth* bill of exceptions presents the question of the admissibility in evidence of the lease from John W. Garrett to Wilson, the defendant, dated July 2nd 1873, conveying the several lots of ground described in the lien

claim. We see no valid objection to the admissibility of this evidence. It was offered, as the exception states, as evidence "in connection with other evidence to be thereafter offered, to show the defendant's ownership of the property at and before the time of the ordering and furnishing of the materials in question, and the making of said lease, that defendant owned the property for the erection of which the plaintiffs alleged they furnished the bricks."

The ownership of the defendant being denied by the pleading and put in issue, we think the evidence was properly admitted, the lease was executed during the time the bricks were being furnished, between the date of the first and last items in the account.

The *fifth, sixth* and *seventh* bills of exception were each taken to the allowance by the Court of certain questions to be asked of the witnesses; but they do not state what answers were given by the witnesses, and the two latter do not state that the questions were answered at all.

The bill of exceptions ought to state what testimony was given by the witness, in order that this Court may determine whether the appellant was injured by the ruling of the Court; for without this appears there is no ground for reversal. It is immaterial therefore to express any opinion as to the pertinency and propriety of the questions asked of the witnesses. *Ramsay & Jenkins vs. Glass,* 9 *Gill,* 56; *Anderson vs. Garrett,* 9 *Gill,* 121.

The *eighth, ninth* and *tenth* bills of exception have been abandoned.

The *eleventh* bill of exceptions brings up for review the ruling of the Superior Court upon the prayers, and the instruction given to the jury.

The appellees offered six prayers and the appellant *twenty-eight.* These were all refused, principally for the reason stated by the learned Judge, that the case presented no such complication of law or facts as to justify his send-

Wilson *vs.* Merryman, *et al.*

ing it to the jury with such a number of instructions as were asked, and which would tend to confuse and mislead them, and therefore he submitted the case to the jury with a single instruction designed to present to them in a plain and intelligible form the matters proper for their consideration and decision

We quite agree to the propriety of this course, and are of opinion that the instruction given covered the whole case, and so far as regards the legal propositions involved, it is free from objection. Under these circumstances it is not necessary to consider the several prayers offered by the appellant; their rejection presents no ground for reversal. *Mayor, &c. vs. Pennington & Harlan,* 15 *Md.,* 17; *Key vs. Dent,* 6 *Md.,* 142; *Keech vs. Railroad Co.,* 17 *Md.,* 32.

But this bill of exceptions shows that special objection was made in the Court below to the instruction granted, on the ground of insufficiency of evidence, to support the hypothesis of fact therein stated. This objection having been presented in the Court below, is properly before us, and if well founded, is material and fatal.

Before the adoption of our late *Rules,* such an objection was always open in the Appellate Court. *Long vs. Eakle,* 4 *Md.,* 454; *Marshall vs. Haney,* 4 *Md.,* 499; *Keech vs. Railroad Co.,* 17 *Md.,* 33.

*Rule* 4 requires that it be made in the Court below, and in such case *Rule* 5 directs that "the particulars in which the proof is supposed to be defective shall be briefly stated, and all the evidence offered in any wise connected with such supposed defect shall be set out in the bill of exceptions." 29 *Md.,* 2.

This Rule has not been observed in the present case. The *eleventh* bill of exceptions contains no evidence; but if we examine all the testimony set out in the other bills of exception, as the basis upon which the Court's instruction rests, we find that the special objection made by the appellant is well founded.

There is no evidence contained in any of the bills of exception, of the particular facts mentioned in the objection. These facts are material, they form an essential part of the hypothesis of the instruction. The only items of account within the six months are 3000 paving bricks, charged on *March 25th, May 2nd and May 9th,* 1874. It appears that all the R. K. (run of kiln) bricks were delivered by the 19th day of June 1873, then there was an interval till November 13th 1873, when the first paving bricks were delivered.

The *onus* was on the plaintiffs to prove that the *paving* bricks were delivered under the original contract to furnish bricks, and not under a new and distinct contract. *Ortwine vs. Caskey, et al.,* 43 *Md.,* 135 ; *Trustees, &c. vs. Heise,* 44 *Md.,* 454. The particular facts submitted to the jury by the instruction, and pointed out in the appellant's exception, were material and pertinent to that issue and there being no evidence in the record to support that part of the instruction the judgment must be reversed.

With respect to the motion in arrest, we deem it unnecessary to refer particularly to the reasons assigned in its support; and are of opinion it was properly overruled.

As the case must be sent back for a new trial, it is proper to say that the lien on the *fourthly* described house having been released, and the verdict of the jury having been rendered for the defendant as to that house and the house next adjoining thereto on the north, being that thirdly described in the lien claim, and no appeal having been taken by the plaintiffs, they are concluded thereby, and the only questions open on the new trial will be those referring to the two houses nearest Lexington street, one of which appears to be claimed by Aquilla M. Carroll and the other by Ross T. Pennington.

*Judgment reversed, and*
*new trial ordered.*

(Decided 26th March, 1878.)